# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**STEPHEN WHITE, on behalf of himself and
all others similarly situated,**

            **Plaintiff,**

**-vs-**                                         **Case No. 6:10-cv-1780-Orl-28DAB**

**IMPAC FUNDING CORPORATION,
BAC HOME LOANS SERVICING, LP,**

            **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on review of the Notice of Removal filed in this case by Defendants (Doc. No. 1). Although there are pending motions to dismiss referred to the undersigned, for the following reasons, the Court finds that it is without subject matter jurisdiction and therefore **respectfully recommends** that this matter be **remanded** to state court.

### *Background*

Plaintiff Stephen White ("Plaintiff") commenced this putative class action pursuant to Florida's Rules of Civil Procedure, by filing his Complaint in state court on October 26, 2010 (Doc. No. 2). The Complaint was served on Defendant BAC Home Loans Servicing, LP ("BAC") and on Defendant Impac Funding Corporation ("Impac") on November 1, 2010, and a Notice of Removal (Doc. No. 1) was filed December 1, 2010 (Doc. No. 1).

### *The allegations of the Complaint*

Plaintiff alleges that he is the owner of residential real property located in Kissimee, Florida (Compl. ¶ 2); Impac is a foreign corporation engaged in mortgage servicing and investment activities;

and BAC is a foreign limited partnership, engaged in banking and mortgage activities (Compl. ¶ 3-4). Plaintiff sues on his own behalf and also on behalf of a putative class of persons

> who, after 2007, were solicited by Defendants, IMPAC FUNDING CORPORATION and BAC HOME LOANS SERVICING, to enter into a mortgage loan modification agreement, and who subsequently were denied the terms of the loan and improperly assessed late penalties despite timely payments of their loan obligations.

(Compl. ¶ 18).

Plaintiff asserts that damages "exceed $15,000.00, exclusive of interests, costs, and attorney's fees" (Compl. ¶1) for the following state law causes of actions: breach of contract, conversion, claim for violation of Florida's civil theft statute, claim for violation Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), claim for violation of Defendants' breach of duty, fraud, libel and defamation per se, and civil conspiracy (Compl. ¶ 26-127). Plaintiff asserts that "upon information and belief, hundreds (and perhaps thousands) of account holders entered into agreements with the Defendants similar to the agreement described in [the exhibits attached to the Complaint] which Defendants had no intention of honoring." (Compl. ¶ 19).

In their Notice (Doc. No. 1), Defendants assert that removal is based on the provisions of 28 U.S.C. § 1441 (2006), as amended in relevant part by the Class Action Fairness Act of 2005 ("CAFA"), and authorized by 28 U.S.C. § 1453. They contend that diversity is present and all of the requirements of CAFA are met.

***Standards of Law***

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir.1994). As such, federal courts only have the power to hear cases that they have been authorized to hear by the Constitution or federal statute. *Kokkonen,* 511 U.S. at 377. When a case is initially filed in state court, a party may remove it if the case originally could have been brought in federal court. *See* 28 U.S.C. § 1441(a). *Accord, Lowery v. Alabama Power Co.,* 483 F.3d 1184,

1207 (11th Cir.2007), *cert. denied,* ___U.S.___, 128 S.Ct. 2877, 171 L.Ed.2d 812 (2008) ("the party seeking a federal venue must establish the venue's jurisdictional requirements" and removing defendants bear that burden in the context of a motion to remand). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

A federal court must inquire *sua sponte* into the issue of jurisdiction when it appears that jurisdiction may be lacking. *Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000). With respect to cases removed from state court, federal courts must patrol the limits of their jurisdiction, and a district court may remand a case *sua sponte* if the court lacks subject matter jurisdiction. *See Watson v. Smith*, 2010 WL 1197872, 2 (M.D. Ala. 2010), *citing Corporate Mgmt. Advisors, Inc. v. Artjen Complexus, Inc.*, 561 F.3d 1294, 1296 (11th Cir. 2009). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed.R.Civ.P. 12(h)(3).

*The CAFA Standards*

Under CAFA, federal courts have original jurisdiction over class actions "in which the amount in controversy exceeds $5,000,000 and there is minimal diversity (at least one plaintiff and one defendant are from different states)." *Miedema v. Maytag Corp.,* 450 F.3d 1322, 1327 (11th Cir. 2006) (internal quotation marks omitted); *see also* 28 U.S.C. § 1332(d)(2), (6). In addition, the number of members of all proposed plaintiff classes must exceed 100. 28 U.S.C. § 1332(d)(5)(B). Thus, subject to certain exceptions, 28 U.S.C. § 1332(d)(3) to (5), CAFA provides federal courts with jurisdiction over class actions provided that: (1) any member of the plaintiff class is diverse from any defendant, Section 1332(d)(2); (2) the aggregate of the claims of individual class members exceeds $5 million exclusive of interests and costs, Section 1332(d)(2), (6); and (3) the number of plaintiffs in all proposed plaintiff classes exceeds one hundred, Section 1332(d)(5)(b); *Lowery,* 483 F.3d at

-3-

1193-94; *see also Miedema,* 450 F.3d at 1327; *Evans v. Walter Indus., Inc.,* 449 F.3d 1159, 1163 (11th Cir. 2006).

The removing party "bears the burden of proof with regard to establishing federal court jurisdiction." *Miedema,* 450 F.3d at 1328 (internal quotation marks omitted); *accord Lowery,* 483 F.3d at 1208. Where, as here, damages are unspecified, the removing party has the burden of establishing the jurisdictional amount by a preponderance of the evidence. *Lowery,* 483 F.3d at 1210. Removal statutes are construed narrowly, and uncertainties are resolved in favor of remand. *Miedema,* 450 F.3d at 1328-30.

*Analysis*

Defendants contend that the removal papers and the Complaint establish jurisdiction under CAFA.

*Diversity*

As noted above, in order to meet this requirement, there must be a showing that any plaintiff is diverse from any defendant. 28 U.S.C. § 1332(d)(2). Here, Plaintiff alleges that he owns real property in Florida and both Defendants are "foreign." In the removal papers, Defendants represent that BAC is a citizen of Texas and Nevada and Impac is a citizen of California (Doc. No. 1 ¶ 7-8). While citizenship requires more than mere ownership of real estate with respect to Plaintiff, absent any objection or contrary evidence, the Court accepts the minimal showing of diversity for present purposes.

*The amount in controversy and the number of proposed plaintiffs*

Although these are separate requirements, in the absence of a specified amount of damages the Court examines these elements together as the amount in controversy in this instance necessarily depends upon the number of plaintiffs in the proposed class. As the Eleventh Circuit has recently

noted: "If the jurisdictional amount is either stated clearly on the face of the documents before the court, or readily deducible from them, then the court has jurisdiction." *Cappuccitti v. DirecTV, Inc.*, 623 F.3d 1118, 1123 (11th Cir. 2010), *citing Lowery*, 483 F.3d at 1211.

Plaintiff's Complaint does not specify the amount of damages, save that they exceed $15,000.00. Moreover, the number of proposed class members is plead vaguely as "hundreds," and only "upon information and belief." Such vague allegations are not a substitute for establishing jurisdictional facts. *See Handforth v. Stenotype Institute of Jacksonville, Inc.,* 2010 WL 55578, 2 (M.D. Fla. 2010) (finding allegations of citizenship "upon information and belief" to be insufficient to support diversity and, as a result, jurisdiction under CAFA was inappropriate). The Court is not required to blindly credit an allegation that hundreds or thousands of class members exist, especially where, as here, there is no showing of the information which apparently was relied upon to establish the alleged belief.[1] The allegations of the Complaint, without more, do not establish the jurisdictional amount here.

Perhaps in recognition of these deficiencies, Defendants seek to establish jurisdiction by introducing evidence from which to make the suggested reasonable inferences and extrapolations. *See Pretka v. Kolter City Plaza II, Inc*., 608 F.3d 744, 754 (11th Cir. 2010). Defendants have presented a theory that jurisdiction is established by calculations and assumptions based on its records and the analysis in the Declaration of Alexandra Kotlyar (Doc. No. 1, Attachment 1). The analysis, however, is flawed.

As noted above, Plaintiff has defined the purported class as including all persons "who, after 2007, were solicited by Defendants, IMPAC FUNDING CORPORATION and BAC HOME LOANS

---

[1] Moreover, while Defendants read these allegations broadly ("a class of only 252 members with $15,000 in damages and attorney's fees would exceed the $5,000,000 minimum" – Doc. No. 1 at footnote 5) they can just as well be interpreted narrowly to show that jurisdiction is absent. A class of 200 people, for example, with damages of $15,000.00 each would be consistent with the allegations but would not meet the jurisdictional threshold, even if the Court were inclined to assume, as Defendants invite, an attorney's fee award of 1/3 the total damages.

SERVICING, to enter into a mortgage loan modification agreement, and who subsequently were denied the terms of the loan and improperly assessed late penalties despite timely payments of their loan obligations." (Compl. ¶ 18). Defendants contend that a fair reading of this proposed class definition "broadly implicates all individuals who: (1) have loans held by IMPAC and serviced by [BAC]: (2) have been offered loan modifications by either IMPAC or [BAC], (3) were denied a modification agreement, and (4) were charged late fees." (Doc. No. 1 at ¶ 26). Defendants then assume "that all of the non-modified loans with assessed late fees during the class period may be members of the class because all of those borrowers may believe that they were refused a modification." Defendants contend that "2,105 borrowers of loans owned by IMPAC and serviced by [BAC] are (1) listed in the [BAC] system as not having received modifications and (2) were charged late fees." Defendants argue that the class may also include those loans that are listed in the records of BAC as having a received a modification and that have assessed late fees. Defendants state that there are "1,664 borrowers whose loans are (1) owned by IMPAC and serviced by [BAC] (2) are listed as having a completed modification, and (3) have had late fees assessed between January 1, 2008 and November 1, 2010." From these assumptions and records, Defendants extrapolate the amount of damages presumably implicated and conclude that the jurisdictional amount is met.

The difficulty with this argument is that it is premised on a faulty interpretation of the class definition. As noted above, Defendants contend that a fair reading of the proposed class definition "broadly implicates all individuals who: (1) have loans held by IMPAC and serviced by [BAC]: (2) have been offered loan modifications by either IMPAC or [BAC], (3) were denied a modification agreement, and (4) were charged late fees." (Doc. No. 1 at ¶ 26). The "fair reading" suggested by Defendants, however, is inconsistent with the definition of the class actually proposed by Plaintiff; namely those persons who, after 2007, were solicited by Defendants to enter into a mortgage loan modification agreement, and who subsequently were denied the terms of the loan modification *and*

-6-

improperly assessed late penalties *despite timely payments* of their loan obligations. (Compl. ¶ 18 – emphasis added). The "wrong" complained of by Plaintiff is that the terms of the modification were not honored **and** late fees were imposed **despite timely payments.** Plaintiff does not purport to represent every borrower who was late on paying his mortgage, but only those borrowers offered the modification, denied its terms, and hit with late fees despite timely payments. As Defendants' definition does not purport to limit the class to those offered the modification, denied the terms of the modification, and charged late fees improperly, it is over-inclusive, and probably significantly so.

A look at the two classes of putative class members presented by Defendants illustrates the point. Defendants have introduced evidence of the number of non-modified loans with assessed late fees (as borrowers *may believe* that they were refused a modification), but there is no showing that these borrowers were ever offered the modification, and no proof that they made timely payments but were charged late fees anyway. In short, this interpretation of the defined class includes anyone who has a mortgage with Defendants and were assessed a late fee, for whatever reason, including (presumably) that they did not timely pay the mortgage. Such a borrower, however, would be explicitly *outside* the class, as the class is defined as those that were assessed fees despite timely payments. Absent any connection with the modification, the Declaration does not present any facts sufficient to establish jurisdiction.[2]

The second category fares no better. Defendants offer evidence of modified loans, that may be deemed not modified properly by borrowers, where late fees were charged. While it is safe to infer that these borrowers were offered a modification (in that the loans were deemed modified), there is still no showing that these borrowers were charged late fees despite timely payments. Again, there

---

[2]This is not a case where the defendants lack information necessary to meet their burden of establishing a basis for jurisdiction. More so than the Plaintiffs, the Defendants here know how many customers they have, how many sought loan modifications and how many were assessed penalties.

is no wrong alleged in assessing a late fee according to the terms of the mortgage and Plaintiff does not seek to recover, as damages, *all* late fees charged, only those charged under similar circumstances. As such, this showing is insufficient. *See Thomas v. Bank of Am. Corp.*, 570 F.3d 1280, 1283 (11th Cir. 2009) (*per curiam*) (affirming remand of case where plaintiffs sought refund of some, but not all, fees from defendant and defendant's affidavit only reflected total amount of fees); *Pretka, supra,* 608 F.3d at 761 ("*Thomas* stands for the basic proposition that a fundamentally flawed declaration, in combination with a complaint providing "no information" on the amount in controversy . . . cannot establish jurisdiction by a preponderance of the evidence.").

Defendants must establish the amount in controversy by a preponderance of the evidence, and not by impermissible speculation. *See Lindsey v. Ala. Tel. Co.*, 576 F.2d 593, 595 (5th Cir.1978) (noting that a court cannot speculate as to the number of members in an alleged class action). The absence of any reliable evidence or allegations regarding the number of similarly situated class members means that there is no competent showing that the class includes 100 or more members. The Eleventh Circuit has recognized that the 100 or more member requirement is jurisdictional. *See Lowery,* 483 F.3d at 1194. *See also Miedema,* 450 F.3d at 1327 n. 4. As such, this requirement of CAFA has not been met.

In addition to finding no competent showing of the size of the class, the Court finds Defendants have otherwise failed to meet their burden of establishing the amount in controversy. Defendants contend that "it is likely that Plaintiff's claim of damages is at least equal to the damages that the rest of the class could claim because his loan amount and interest rates are comparable to national averages." (Doc. No. 1, p. 6). Defendants also resort to "averages" to calculate the "assumed" monthly reduction on the average loan, the "assumed" length of time the damages accrued (based on an average of when " home modification activity peaked"), and an assumed

"customary" one third of the damages as attorney's fees. Cobbling these assumptions and averages together, Defendants conclude that the amount in controversy is met.

Although Plaintiff alleges that his claim is "typical of the claims of the class," he does not allege (nor could he, on these facts) that his *damages* are the same. *See Barkwell v. Portfolio Recovery Associates, LLC*, 2010 WL 2012149, 2 (M.D. Ga. 2010) (rejecting a similar contention that the Court should assume that each putative class member was subjected to identical damages as "Barkwell's own class definition and admission that his $9,800 claim is 'typical and representative' leads to an amount in controversy well in excess of $1 billion."). Indeed, in view of the nature of the claim (the improper assessment of late fees and improper application of payments), it is more likely than not that Plaintiff's damages will be unique to Plaintiff. The only way each class member would have the same damages would be if they each had the same loan, for the same amount, with the same terms; and paid the same amount, with the same misapplication of payments; *and* were assessed the same late fees over the same period of time. There is nothing to suggest that scenario here.[3] While it is true "that a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it," *Pretka*, 608 F.3d at 754, it is equally true that "[t]he absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should not be divined by looking to the stars." *Lowery*, 483 F. 3d at 1215.

## *CONCLUSION*

As the Court concludes that Defendants have failed to meet their burden of establishing the CAFA requirements by a preponderance of the evidence, and the Court finds jurisdiction is otherwise

---

[3] *Compare Pretka*, 608 F.3d at 771, where the court noted that "it is undisputed that [defendant] possesses non-speculative knowledge of the amount of every putative class member's claim."

lacking,[4] it has no subject matter jurisdiction to entertain the motions to dismiss or any other matter pending in this case. As such, it is **respectfully recommended** that the matter be **remanded** to the Circuit Court of the Ninth Judicial Circuit in and for Osceola County, Florida.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on February 14, 2011.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy

---

[4] There is no federal question presented and no showing that Plaintiff's damages meet the $75,000 threshold sufficient to establish diversity jurisdiction apart from CAFA. Indeed, Plaintiff alleges that his account statements "now incorrectly indicate a past due amount of $4,061.05." Compl. ¶ 15.